UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LSQ FUNDING GROUP,L.C.,

        Plaintiff,

v.                                                          Case No:  6:17-cv-1239-Orl-40DCI

SHORT BARK INDUSTRIES, INC.,

        Defendant.

_____/

## AGREED ORDER APPOINTING RECEIVER

This matter comes before the Court on the Joint Stipulation for Entry of Agreed Order Appointing Receiver by Plaintiff, LSQ FUNDING GROUP, L.C. ("Plaintiff"), Defendant, SHORT BARK INDUSTRIES, INC. ("Defendant") and non-party LISA HELD JANKE (Doc. 6) (the "Joint Stipulation"); LSQ's Emergency Stipulated Verified Motion for Appointment of a Receiver and Incorporated Memorandum of Law in Support Thereof (Doc. 8) (the "Motion"); and Plaintiff's Verified Complaint (the "Verified Complaint") (Doc. 1). The Court, having considered the Joint Stipulation, the Motion, the Verified Complaint, the record, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law:

    A.    On January 10, 2013, Plaintiff as "Purchaser" and Defendant as "Seller" entered a Factoring and Security Agreement, which was subsequently amended (the "Factoring Agreement").

    B.    As of October 21, 2016, Defendant owed Plaintiff the sum of $3,376,177.37 as an overadvance of Defendant's account (together with accrued interest,

attorney's fees, costs, and other possible fees and expenses payable under the Factoring Agreement (collectively, the "Indebtedness").  Pursuant to the Factoring Agreement, Defendant granted Plaintiff a continuing first priority security interest in the Collateral further defined and described in Exhibit A. LSQ now alleges the amount owed to it by the Defendant is $9,598,281.11 as of June 30, 2017.

C.      Defendant is in the business of manufacturing and selling military and commercial apparel, primarily to the United States government and its armed forces (collectively the "Government"), which generated accounts receivable.  For various reasons, Defendant has experienced serious financial problems.

D.      Pursuant to contracts between the Government and the Defendant, these accounts receivable would be processed by the Government through its System for Award Management ("SAM"), and on-line database for government contracts.

E.      Upon Plaintiff's information and belief, the Collateral is located in Guanica, Puerto Rico (District of Puerto Rico), Tellico Plains, Tennessee (Eastern District of Tennessee), Sunset, Florida, Miami Gardens, Florida (both Southern District of Florida), Taylorsville,  Mississippi, and/or Stonewall, Mississippi (both Southern District of Mississippi).

F.      Defendant has breached or otherwise defaulted under the Factoring Agreement.   Following that breach and default, Plaintiff and Defendant

negotiated and entered into that certain Forbearance Agreement dated October 25, 2016.

G.     Pursuant to the terms of the Forbearance Agreement, among other things, Defendant stipulated to the appointment of a receiver as sought herein over Defendant and the Collateral upon the expiration or termination of the Forbearance Period described therein.  Specifically, Section 5 of the initial Forbearance Agreement provides:

> Short Bark and Janke hereby acknowledge that, upon the expiration of the Forbearance Period (as hereinafter defined) or its earlier termination based upon a Subsequent Default (as hereinafter defined), LSQ will have the right to file a lawsuit against them in the United States District Court, Middle District of Florida, Orlando Division (the "Lawsuit") and in connection therewith, seek the appointment of a receiver (the "Receiver") to take full possession and control of the business and all assets of Short Bark and to operate such business as may be determined by the Receiver's business judgment in consultation with LSQ.  The Receiver shall expressly be empowered to, and shall, investigate and consider the possibility of: (a) securing a lender(s) to make a loan(s) to Short Bark; (b) locating a person or entity willing to purchase some or all of the assets of Short Bark; or (c) liquidating the assets of Short Bark in an orderly fashion.

H.     The Forbearance Period has been terminated by Plaintiff as a result of Subsequent Defaults by Defendant as described in Plaintiff's letter to Defendant on July 3, 2017 (the "Default Letter"), a copy of which is attached to the Complaint as Exhibit F.

I.      Based upon the foregoing, Plaintiff is likely to succeed on the merits.

J.      As a result of the Defendant's financial straits, it requires continued financing so that it may fulfill pending and future purchase orders.  In the absence of Defendant's fulfilling purchase orders, the Collateral is in serious

threat and potential imminent danger of dissipation, and it may be irreparably diminished and harmed absent the relief requested by Plaintiff in the Motion.

K.     The Court has proper jurisdiction and venue over the Defendant and this action, adequate notice of the Motion has been provided to the Defendant, who is the record owner of the Collateral, and the Defendant has stipulated to the entry of this Agreed Order.

L.     Plaintiff has no adequate remedy at law to prevent the potential irreparable harm and injury to its Collateral and to protect its rights under the Factoring Agreement.

M.     At this time there is no other less severe remedy available to Plaintiff and there is no other way to prevent dissipation of the Collateral.

N.     Public interest will be served by entry of this Order because Defendant's operations would cease were the Court not to enter this Order.  Defendant employs several hundred people who would be without work if operations were to cease, and Defendant would not be able to fulfill Government orders for military apparel.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Plaintiff's Emergency Motion to Appoint Receiver (Doc. 8), is **GRANTED**.

2.     Appointment of Receiver.     Mark Iammartino, Managing Director of MorrisAnderson & Associates, Ltd., is hereby appointed receiver for the Defendant, Defendant's operation and affairs and the Collateral (the "Receiver"), to take possession, control, and charge of Defendant's operation

and financial affairs, the Collateral, and any other property of the Defendant (collectively, the "Receivership Estate").  Except as may be otherwise provided herein, no officer, director, shareholder, agent, assign, or employee of the Defendant, no creditor of the Defendant, and no other person shall have any authority or control over the Receivership Estate.  The Receivership Estate shall further include all of the property identified in attached Exhibit "A" and the Defendant's interest and right in the following property (whether or not such property constitutes the Collateral):

a. All cash, accounts, including accounts receivable, deposit accounts, choses in action, promissory notes, insurance policies, and other rights to payment;

b. All goods and inventory, including finished goods, work-in-process, raw materials and supplies;

c. All fixtures, machinery, equipment, vehicles, furniture and other tangible personal property;

d. All intellectual property, including copyrights, trademarks, patents and patent applications, licenses, and royalties;

e. All electronic or computer property, including electronic software, programs, and source codes;

f. All leasehold interests as lessee or tenant under leases for any machinery, equipment, or personal property used in the Defendant's business operations or any real estate where the assets of the

Receivership Estate are located; provided, however, the Receiver shall not be deemed by this Agreed Order to have assumed any such leases;

g.  All cash, rents, income and other revenues, or profits generated from the sale or disposition of the Receivership Estate;

h.  All claims and causes of action;

i.  All business records, whether electronic or otherwise, including books of account, ledgers, customer lists, logs, journals, and similar items related to operation or maintenance of Defendant's business; and

j.  All keys, security access cards and codes to buildings, safes and deposit boxes where assets in the Receivership Estate are located.

3.  <u>Receiver's Powers</u>. The Receiver shall have and possess all powers, rights, privileges, and prerogatives necessary to protect, safeguard, and manage the Receivership Estate.  Subject to any other specific provisions in this Agreed Order, the Receiver's powers shall include, but are not necessarily limited to, the authority to take the following actions:

a.  Take immediate possession and control of the Receivership Estate, including but not limited to all, business operations, machinery, equipment, furniture, fixtures, inventory, accounts, deposit accounts, utility deposits, other deposits, franchises, patents, trademarks, copyrights, and any other intellectual property, rights, privileges, or effects, books, records, accounting records, federal, state and local tax returns, securities, mortgages, stocks, bonds, debentures, computers, computer disks, banks statements, checks, and all real property and

leasehold interests of the Defendant wherever situated, and to administer such assets and property as is directed to comply with the directions contained in this Agreed Order, and to hold all assets and property pending further order of this Court;

b. Enter upon, gain access to, and take possession of the Receivership Estate assets and property to use, operate, manage, control, preserve and/or sell, and to take such actions as are necessary to secure the Receivership Estate assets and property, including changing the locks, security codes, or other access procedures to the subject premises if deemed necessary by the Receiver in his discretion;

c. Assume control of and be named as authorized signatory for all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Defendant, and upon order of this Court, of any subsidiaries or affiliates of the Defendant, provided that the Receiver deems it necessary;

d. Receive all income and profits from the use, operation, collection, sale, lease, rental, or other disposition of the Receivership Estate; to care for, preserve, protect, secure and maintain the Receivership Estate, until they are sold and to incur the reasonable expenses necessary for such care, preservation, and maintenance;

e. Demand, collect, and receive all revenues, income, and profits currently in the possession, custody, or control of any guarantors or now due and

hereafter coming due from the operation of the Defendant, and to keep the Receivership Estate insured and in good repair, provided, however, that nothing herein shall compel the receiver to use his own funds to do any of the foregoing;

f.  Access and take possession of any monies and funds on deposit in any banks and/or savings and loan associations or any other financial institution or brokerage houses in the name of the Defendant, and the Receiver's receipt of said monies and funds shall discharge said banks and/or savings and loan associations from further responsibility for accounting to the Defendant for monies and funds for which the Receiver shall give his receipt;

g.  Take possession of all the books and records pertaining to the Defendant's assets and property, wherever located, as the Receiver deems necessary for the proper administration, management and/or control of the receivership and the Receivership Estate, but the books and records shall be made available to the Plaintiff and the Defendant and their counsel upon request; and to receive, open, read, and respond to all mail addressed to the Defendant;

h.  Negotiate and enter into contracts that are necessary or incidental to preserving, protecting, managing and/or controlling the Receivership Estate;

i.  Establish bank accounts for the deposit of monies and funds collected and received in connection with the operation of the Defendant and

administration of the Receivership Estate and to transfer all monies and funds on deposit in the name of the Defendant upon the entry of this Agreed Order into such accounts; provided that any funds on deposit are insured up to customary limits by an agency of the United States of America;

j.   Institute ancillary proceedings in this state or other states or countries as are necessary to preserve and protect any of the Receivership Estate;

k.   Seek a loan(s) in the name of the Defendant;

l.   Seek a party(ies) willing to inject cash in the Defendant;

m.   Determine the value of the Receivership Estate, receive and evaluate purchase offers for the sale of any or all of the Receivership Estate, sell (with the prior written consent of Plaintiff) any or all of the Receivership Estate either through private transactions or public auctions, and either in individual lots or in bulk sales, all without being subject to the requirements of 28 U.S.C. § 2001-2004;

n.   Cooperate with Plaintiff and/or other lien-claimants in the non-judicial sale of any Collateral;

o.   Ensure adequate utility services are provided to the Receivership Estate, including paying for such services and paying for such services that may have heretofore been incurred but are unpaid;

p.   Contract and pay for hazard, fire, and liability insurance for the Receivership Estate in the event it is not adequately insured, and instruct

any insurers to name Receiver on existing policies as additional insureds and to name Plaintiff as primary loss payee (with no responsibility for payment of premiums);

q. Manage and operate the Receivership Estate in order to maximize the recovery of the Receivership Estate according to the Receiver's best business judgment;

r. Continue or terminate the employment of any of the Defendant's employees, to enter into new or modified arrangements with employees or independent contractors as necessary or prudent to manage the Receivership Estate and carry out the Receiver's duties;

s. Continue business operations of the Defendant as needed to complete existing or new purchase orders or to liquidate the Receivership Estate's inventory of finished goods, works in progress, raw materials, supplies, and other similar assets;

t. Collect the accounts receivable that comprise part of the Receivership Estate, including taking charge of the Federal SAM accounts payable system as it relates to sums due to Defendant, sending invoices and statements on the Defendant's customary forms, hiring collection agencies, and initiating collection lawsuits in the appropriate account in the Defendant's name;

u. Remit any of the proceeds from the collection of the Defendant's accounts receivable to Plaintiff until the indebtedness owed to Plaintiff has been paid in full, as long as this occurs after making provision for

the payment of actual and estimated costs and expenses in accordance with this Agreed Order, inclusive of the fees and costs of the Receiver;

v.  Perform, renew, cancel, negotiate, terminate, or otherwise adjust any pending real estate lease agreements relating to the Receivership Estate to which Defendant is a party, or to enter into new contracts as Receiver in order to control, manage, and operate the Receivership Estate; provided, the Receiver shall not enter into new contracts outside the ordinary course of business of operating the Receivership Estate except as needed to make emergency repairs or except as needed to provide for the sale and liquidation of the Receivership Estate without further order of this Court or the express, written consent of Plaintiff and Defendant;

w.  Pay any taxes, charges, assessments and similar items affecting the Receivership Estate that are already or hereafter incurred, and to prepare and file any tax returns required for the assets or operation of the Receivership Estate;

x.  Initiate, pursue, resist, defend, or intervene in all suits, actions, claims, liens, and demands which involve the Receivership Estate;

y.  Abandon any property of the Receivership Estate that is burdensome and of inconsequential value in the Receiver's business judgment;

z.  Engage and employ others without prior court approval as deemed reasonably necessary by the Receiver to manage, preserve, and operate the Receivership Estate in the ordinary course of business,

including but not limited to MorrisAnderson & Associates, Ltd., attorneys, accountants and contractors;

    i.  Engage and employ others as deemed reasonably necessary by the Receiver to obtain a loan(s) to pay Plaintiff the sums due to Plaintiff under the Factoring Agreement, sell or liquidate the Receivership Estate, whether or not in the ordinary course of business, including but not limited to auctioneers, appraisers, liquidators, advertisers, sales consultants, and brokers, provided, however, that the employment of any such persons shall be subject to the express, prior, written consent of the Plaintiff and Defendant;

    ii.  Pay the reasonable fees and expenses of any professional consultants as and similar experts engaged by the Receiver as and when they come due in accordance with other provisions of this Agreed Order;

    iii.  Do any and all other acts which could be carried out lawfully by a Puerto Rico corporation where said acts are necessary for the carrying out of the final settlement of the unfinished business of the Defendant and the winding down of their affairs to marshal, transport, and assemble the Receivership Estate as necessary to maintain, preserve, or liquidate the same provided such act is consistent with the above; and

    iv.  Take such other action as may be approved by this Court.

4. <u>Confidentiality</u>.   Notwithstanding the foregoing, the Receiver shall keep confidential, and shall not, without the prior written consent of the Defendant, publish or disclose to others, copy, photograph, reproduce, or transcribe in any manner whatsoever, in whole or in part, Short Bark's proprietary designs, manufacturing or design software, patentable information related to Short Bark's design and manufacturing, or Short Bark's other proprietary information (collectively "Confidential Information"), except to Plaintiff solely on an as-needed basis.   To the extent that Plaintiff comes into possession of any Confidential Information, Plaintiff shall not, without the prior written consent of the Defendant, publish or disclose to others, copy, photograph, reproduce, or transcribe the Confidential Information in any manner whatsoever, in whole or in part.   The Receiver shall not have access to Short Bark's communications with its attorneys, including confidential communications on invoices.

5. <u>Receiver's Authority to Receive Advances of Funds</u>.   To enable the Receiver to operate, manage, and liquidate the Receivership Estate, including operating the Defendant's businesses and paying the normal expenses thereof, and to otherwise fund the disbursements and payments as contemplated and authorized herein, the Receiver is authorized, but not required, to receive advances of money from Plaintiff (the "Advances"). All such Advances (a) shall be made in Plaintiff's absolute and sole discretion, and nothing contained in this Agreed Order shall create any duty or obligation upon Plaintiff to make any Advances whatsoever, and (b) shall be deemed payments made under the Factoring Agreement to protect, preserve, and manage the Collateral, shall

constitute part of the Indebtedness owed under the Factoring Agreement, and shall be secured by a first priority security interest in and liens upon the Receivership Estate without the necessity of filing or recording any documents. Notwithstanding anything else in this Agreed Order to the contrary, Receiver has no obligation to expend funds in excess of the revenues and Advances actually received by the Receiver and, in the event that a request for Advances is made to Plaintiff which request is denied, the Receiver may resign his receivership by filing a notice thereof with the Court.

6. <u>Sale of the Receivership Estate Assets</u>.   Notwithstanding any possible provisions to the contrary in this Agreed Order, the Receiver shall not be authorized to sell any portion of the Receivership Estate assets outside of the ordinary course of business without the prior express written consent of the Court.  In connection with any sale or auction of any or all of the Receivership Estate assets other than in the ordinary course of business, the right of Plaintiff to credit bid shall be preserved, and the Defendant in this action shall be deemed to have waived any notice otherwise required to be given to it under the Uniform Commercial Code or any similar laws requiring the delivery of notice with respect to the sale or disposition of collateral. Subject to this provision, the Receiver is allowed to market and sell the assets of the Receivership Estate without the restrictions of 28 U.S.C. § 2001-2004 and free and clear of all liens and encumbrances, with such liens and encumbrances to attach to the sales proceeds in the same validity, order, extent, and priority as existed immediately prior to such sale or disposition.

7. <u>Priority of Liens</u>.  Except as provided in this Agreed Order with respect to Advances and the liens securing such Advances, nothing in this Agreed Order shall alter the priority of any liens or security interests in the Receivership Estate, all of which shall be determined in accordance with applicable law.

8. <u>Turnover of Receivership Property</u>. The Defendant, including its respective officers, agents, representatives or affiliated companies, are hereby restrained and enjoined from disposing, selling, pledging, transferring, concealing, exchanging, assigning, or in any way conveying the Receivership Estate or any portion thereof, and taking any action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties, and the Defendant is hereby ordered to turn over to the Receiver the possession of the Receivership Estate's assets, including:

   a. All cash and bank accounts;

   b. All relevant business and financial records, including lists of accounts payable;

   c. All keys and access cards to buildings, safes, and deposit boxes where the Receivership Estate is located;

   d. All accounts receivable;

   e. All lists of customer deposits;

   f. All outstanding purchase order and bids for contractor work;

   g. All documents identifying pending litigation;

   h. All programs or source codes needed to access any electronic data comprising part of the Receivership Estate; and

i.   Such other records pertaining to the operation of the Defendant's business and the Receivership Estate as the Receiver requests.

9.  <u>Compensation</u>.  Subject to Paragraph 10 below, the Receiver shall be paid for his services on the following fee schedule: (a) <u>Fees</u>: $425.00 per hour for the Receiver, $275 to $350 per hour for the person(s) assisting the Receiver to be paid weekly on the immediately following Friday for the preceding week's services; (b) <u>Expenses</u>: the reimbursement of the reasonable out-of-pocket expenses actually incurred by the Receiver and those assisting the Receiver, to be paid weekly on the immediately following Friday for the preceding week's expenses incurred.   Such fees and expenses shall be paid from revenues remaining, if any, after payment of the normal, ordinary and necessary operating expenses of the Receivership Estate.   If the revenues are not sufficient to cover the Receiver's fees and expenses, such fees and expenses may be paid by an Advance from Plaintiff.

10. <u>Procedure for Compensation</u>.   As soon as reasonably possible following the receipt of any invoices of the Receiver or any licensed professionals or expert consultants engaged by the Receiver, such as attorneys and accountants, the Receiver shall serve a notice summarizing the amount of the invoices to be paid to counsel for Plaintiff and the Defendant and to any other party requesting written notice in this action, each of whom shall have ten (10) days after the delivery of such notice to provide to the Receiver any written objections they have to payment of such invoice(s).  If a written objection is made prior to the due date of the invoice, then the Receiver shall not pay such invoices except

upon written consent of the objecting party or further order of this Court.  If a written objection is timely made under this provision, but not until after the due date of the invoice, then the Receiver may proceed to pay such invoices, but shall hold back from the payment of future invoices a sum equal to the objected portion(s) of such invoice(s) from the immediately following invoice issued by the same person (e.g. the Receiver, his consultants, attorneys, accountants, etc.) which amount shall not be paid except upon written consent of the objecting party or further order of this Court.

11. Budget.  On or before thirty (30) days after the entry of this Agreed Order (the "Budget Deadline"), the Receiver shall furnish to Plaintiff and Defendant a detailed, projected, monthly operating budget for the Receivership Estate that shall be subject to the prior written approval of Plaintiff (as approved, and as may be amended from time to time, the "Budget").  Plaintiff will advise the Receiver in writing within ten (10) business days of receipt of the Budget, or any amendment thereof, whether Plaintiff approves or disapproves the Budget, or any amendment thereof.

12. Remittance to Plaintiff.  On or before the fifteenth day of each month, the Receiver shall pay to Plaintiff all receipts remaining, if any, after payment of the fees and expenses of the Receiver and the Receivership Estate (subject to reasonable reserves agreed to by Plaintiff for the continued operation of the Receivership Estate), to be applied to the Indebtedness. In the event any creditor of the Defendant or other party asserts any claim or interest to such monies or income which such party contends is superior to the secured claim

and security interest of Plaintiff in such funds, then the Receiver shall withhold the disbursement of such monies until such dispute is resolved by the written consent of such parties or by further order of this Court.

13. Status Reports / Status Hearings.  The Receiver shall provide to Plaintiff and Defendant weekly reports (or such other frequency as Plaintiff and Defendant may agree) of the Receiver's management and disposition of the Receivership Estate, including cash receipts and disbursement.  Within sixty (60) days hereafter, the Receiver shall file with the Court and serve upon all parties to this proceeding a written report (a "Status Report") with respect to the performance of his duties as Receiver and setting forth (a) a summary of the material actions taken by the Receiver in connection with his control, management, and liquidation of the Receivership Estate, (b) a summary itemization of the monies received and disbursed by the Receiver, and (c) a summary of the Receiver's plans and projections for the disposition of the remaining Receivership Estate and the closing of this Receivership. Thereafter, the Receiver shall file similar Status Reports with the Court on a monthly basis unless otherwise directed by the Court.  The Court may schedule hearings from time to hearing to receive updates and status reports from the Receiver on the progress of this proceeding and to address any disputes, issues and other matters pertaining to the receivership created by this Agreed Order.

14. No Ratification.  Nothing in this Agreed Order shall be deemed to constitute an acceptance or ratification by the Receiver of any contracts or leases with third

parties currently existing, and nothing in this Agreed Order shall be deemed to affect in any way the enforceability or priority of Plaintiff's rights, remedies, security interests, and liens under applicable law or the Factoring Agreement.

15. Plaintiff's Access to Collateral / No Control or Successor Liability.  Plaintiff shall be authorized to inspect the Collateral and the related books and records, to make copies of the documents or data relating thereto, and to confer with the Receiver and his agents with respect to the status of the Receiver's management and liquidation of the Receivership Estate.  Nothing in this Agreed Order shall be construed as causing or deeming Plaintiff to be in possession or control of any of the Receivership Estate, or to have exerted any authority with respect to the management, operation, protection, or maintenance of the Receivership Estate; nor shall Plaintiff be deemed to have assumed any obligations, liabilities, or debts of the Defendant or the Receiver with respect to any third parties.  This Agreed Order shall not cause Plaintiff to be deemed the successor to the Defendant or create any successor liability upon Plaintiff; nor shall this Agreed Order cause Plaintiff to be deemed the employer of any current or former employees of the Defendant nor otherwise create any obligation upon Plaintiff to pay wages, severance pay, benefits, or any other payment to the Defendant's employees or to provide any notices to the Defendant's employees that the Defendant may be required to deliver under any applicable state or federal law.  Under no circumstances, however, may Plaintiff access Defendant's attorney-client communications.

16. Foreclosure of Collateral.  Nothing in this Agreed Order shall prohibit Plaintiff from exercising its legal and contractual remedies to foreclose, judicially or non-judicially, upon all or a portion of the Collateral, including collection of accounts receivable.  Upon any foreclosure by Plaintiff, the Receiver and the Defendant shall cooperate with Plaintiff and any third party purchaser of the Collateral at foreclosure by turning over control and possession of such Collateral for inspection and disposition.

17. No Personal Liability of Receiver.  The Receiver and his agents and attorneys shall have no personal liability for the debts owed by the Defendant to any third party, and all creditors of the Defendant are enjoined from pursuing the Receiver individually for any claims they may have against the Defendant. Except for an act of gross negligence or willful misconduct, the Receiver and his agents and attorneys shall not be liable for any loss or damage incurred by the Defendant or any other person by reason of any act performed or omitted to be performed by him in connection with the discharge of his duties and responsibilities in this matter.

18. Bond Required.  A bond in the amount of $25,000.00 is required to be posted by the Receiver within ten (10) days of the entry of this Agreed Order.

19. Miscellaneous. The Receiver is authorized to record this Agreed Order in any court or with any government office and to serve it on any person or entity as he deems appropriate to discharge his duties as Receiver.

20. <u>Duration of Receivership</u>.  Except as otherwise provided in this Agreed Order, the receivership ordered hereunder shall continue until the further order of this Court discharging the Receiver and terminating or dissolving the receivership.

21. <u>Bankruptcy</u>.  If the Receiver receives notice that a subsequent petition for relief under the Bankruptcy Code, Title 11, United States Code, has been filed, and part of the bankruptcy estate includes property that is the subject of this Agreed Order (for purposes of this paragraph, the "Bankruptcy Estate Property"), the Receiver shall have the following duties:

   a. Turn over Bankruptcy Estate Property if no relief from stay is sought. The Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation to turn over the Bankruptcy Estate Property (11 U.S.C. § 543).  If Plaintiff has no intention to make such a motion, the Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543.

   b. If Plaintiff intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Bankruptcy Estate Property, the Receiver may remain in possession and preserve the Bankruptcy Estate Property pending the ruling on those motions (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the Bankruptcy Estate Property shall be limited as follows:

      i.   *The Receiver may continue to collect income;*

     ii.   *The Receiver may make only those disbursements necessary to preserve and protect the Bankruptcy Estate Property;*

    iii.   *The Receiver shall not execute any new leases or other long-term contracts; and*

    iv.   *The Receiver shall do nothing that would effect a material change in the circumstances of the Bankruptcy Estate Property.*

c. If Plaintiff fails to file a motion for relief from stay within ten (10) court days after Plaintiff's receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Bankruptcy Estate Property to the appropriate entity, either to the bankruptcy trustee, if one has been appointed, or, if not, to the debtor in possession, and otherwise comply with 11 U.S.C. § 543.

d. The Receiver may petition this Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership or the Receiver's ability to perform its duties.

22. Jurisdiction.  This Court will retain jurisdiction over this matter for all purposes and will order other and further relief that this Court deems appropriate under the circumstances.  The Receiver and any party hereto may, at any time, on proper notice to the parties hereto, apply to this Court for further or other instructions and for further power necessary to enable the Receiver to properly fulfill the duties hereunder or, for good cause shown, seek dissolution of the Receivership.

**DONE AND ORDERED** in Orlando, Florida, on July 7, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

**EXHIBIT "A"**

The "Collateral" consists of the following:

All of Defendant's accounts, contract rights, instruments, documents, chattel paper, general intangibles (including but not limited to trademarks, tradenames, patents, copyrights and all other forms of intellectual property, and tax refunds), investment property, letter of credit rights, supporting obligations, returned and repossessed goods and all rights as a seller of goods.  All collateral securing any of the foregoing.  All of Defendant's deposit accounts, special and general, whether on deposit with Plaintiff or others.  All of Defendant's inventory wherever located.  All of Defendant's claims against any supplier of any of the foregoing, including claims for defective goods or overpayments to or undershipments by suppliers.  All proceeds arising from the lease or rental of any of the foregoing (inventory returned by Defendant to its suppliers shall remain subject to Plaintiff's security interest).  All of Defendant's equipment and fixtures (none of which Defendant is authorized to sell, lease or otherwise dispose of without Plaintiff's prior written consent).